# EXHIBIT 1-A

| | |
|---|---|
| **DISTRICT COURT BOULDER COUNTY, STATE OF COLORADO**<br>**1777 Sixth St.**<br>**Boulder, Colorado 80302**<br>**(303) 441-3750** | EFILED Document<br>CO Boulder County District Court 20th JD<br>Filing Date: Dec 13 2010 4:42PM MST<br>Filing ID: 34833926<br>Review Clerk: Debra Crosser |
| **Plaintiffs**: PROBUILD HOLDINGS, INC. and PROBUILD COMPANY LLC f/k/a PROBUILD EAST LLC,<br><br>v.<br><br>**Defendants**: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; THE HARTFORD CASUALTY INSURANCE COMPANY; THE HARTFORD FIRE INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; HARTFORD UNDERWRITERS INSURANCE COMPANY; FIREMEN'S FUND INSURANCE COMPANY; and ST. PAUL SURPLUS LINES INSURANCE COMPANY. | ▲COURT USE ONLY▲ |
| Attorney for Plaintiffs ProBuild Holdings, Inc. and ProBuild Company LLC f/k/a ProBuild East LLC:<br><br>David J. Driscoll, Atty No. 12246<br>Kenneth R. Morris, Atty No. 36169<br>GARLIN DRISCOLL HOWARD LLC<br>245 Century Circle, Suite 101<br>Louisville, Colorado 80027<br>Telephone: (303) 926-4222<br>Facsimile: (303) 926-4224<br>ddriscoll@gdhlaw.com<br>kmorris@gdhlaw.com | **Case No.** 10 CV 2912<br>Division 2<br>**Courtroom:** |
| **COMPLAINT AND JURY DEMAND** | |

***COME NOW*** the Plaintiffs, ProBuild Holdings, Inc. and ProBuild Company LLC f/k/a ProBuild East LLC ("Plaintiffs"), by and through their attorneys, GARLIN DRISCOLL HOWARD LLC and JENNER & BLOCK LLP, and as and for their Complaint against the Defendants, state, allege, and aver as follows:

**INTRODUCTION**

1.  This is an insurance coverage dispute that is the companion action to case no. 10CA2060 (the "Comprehensive Action").  Plaintiffs, suppliers of building materials, are the targets of pending and potential lawsuits alleging that Plaintiffs or their predecessors supplied drywall imported from China that caused property damage to residential homes and bodily injury to homeowners and occupants ("the Chinese Drywall claims").  The Defendants and those named in the Comprehensive Action issued primary, excess or umbrella liability policies that afford coverage to Plaintiffs against such losses.  The Defendants each were dismissed from the Comprehensive Action on August 19, 2010 or December 7, 2010, on ripeness grounds that are now moot, as described below.

2.  As Plaintiffs have learned of each new Chinese Drywall claim, Plaintiffs have timely notified those Defendants in this Action and the Comprehensive Action whose policies afford coverage for the Chinese Drywall claim and have requested, where appropriate, a defense to the underlying claim.  Four Defendants, including Defendants Travelers Property Casualty Company of America ("Travelers") and The Hartford Casualty Insurance Company ("Hartford"), agreed, after months of negotiations, to satisfy Plaintiffs' defense costs subject to numerous reservations of rights letters.  No Defendant, however, has agreed to indemnify Plaintiffs for any judgment or settlement for any Chinese Drywall claim.

3.  On December 7, 2010, Plaintiffs entered into a favorable settlement with one the largest underlying Chinese Drywall claimants, for $1.95 million.  Because none of their insurers agreed to indemnify Plaintiffs for this settlement, Plaintiffs have committed to fund the settlement with their own resources.

4.  Plaintiffs  seek a declaratory judgment that Defendants Travelers, Hartford, Twin City Fire Insurance Company ("Twin City") and The Hartford Fire Insurance Company

("Hartford Fire") (together, the "Primary Insurers") are jointly and severally liable, along with the other primary insurers named in the Comprehensive Action, to indemnify Plaintiffs for this settlement, and future judgments or settlements resulting from the Chinese Drywall Claims, pursuant to the primary insurance policies these Defendants issued. Plaintiffs further seek a declaratory judgment that Travelers and Defendants The Hartford Underwriters Insurance Company ("Hartford Underwriters"), Firemen's Fund Insurance Company ("Firemen's Fund") and St. Paul Surplus Lines Insurance Company ("St. Paul") (together, the "Excess or Umbrella Insurers") are jointly and severally liable to indemnify Plaintiffs for damages, loss, ultimate net loss and costs arising from the Chinese Drywall claims, pursuant to the excess or umbrella insurance policies these Defendants issued. Finally, Plaintiffs seek a determination that, by refusing to fund the reasonable settlement into which Plaintiffs have already entered for one of the most significant underlying Chinese Drywall claims, all of the Defendants breached their contractual obligations to Plaintiffs under the insurance policies they issued.

**THE PARTIES**

5. Plaintiff ProBuild Holdings, Inc. ("ProBuild") is a corporation formed under Delaware law with its principal place of business in the City and County of Denver, Colorado.

6. Plaintiff ProBuild Company LLC ("ProBuild Company") is also a corporation formed under Delaware law with its principal place of business in Denver, Colorado. ProBuild was formerly known as "ProBuild East LLC," which itself was formerly known as

The Contractor Yard, Inc. ("TCY"), a subsidiary of the Strober Organization ("Strober"). TCY acquired Rosen Building Supplies, Inc. ("Rosen") in December 2007.

7. Defendant Travelers is an insurance company incorporated under Connecticut law with its principal place of business in Connecticut. Travelers is authorized to sell insurance in Colorado.

8. Defendant Hartford is an insurance company incorporated under Indiana law with its principal place of business in Connecticut. Hartford is authorized to sell insurance in Colorado.

9. Defendant Twin City is an insurance company incorporated under Indiana law with its principal place of business in Connecticut. Twin City is authorized to sell insurance in Colorado.

10. Defendant Hartford Fire is an insurance company incorporated under Connecticut law with its principal place of business in Connecticut. Hartford Fire is authorized to sell insurance in Colorado.

11. Defendant Hartford Underwriters is an insurance company incorporated under Connecticut law with its principal place of business in Connecticut. Hartford Underwriters is authorized to sell insurance in Colorado.

12. Defendant Firemen's Fund is an insurance company incorporated under California law with its principal place of business in California. Firemen's Fund is authorized to sell insurance in Colorado.

13. Defendant St. Paul is an insurance company incorporated under Minnesota law with its principal place of business in Minnesota. St. Paul is authorized to sell insurance in Colorado.

14. On August 19, 2010, the Court dismissed Travelers and St. Paul from the Comprehensive Action on ripeness grounds, holding, *inter alia*, that no dispute between the parties as to the duty to indemnify could be ripe for adjudication because no underlying Chinese Drywall Claim had yet resulted in a judgment or settlement. The Court's dismissal was unrelated to the merits of whether Plaintiffs are entitled to insurance coverage under any policy issued by Travelers or St. Paul.

15. On December 7, 2010, the Court dismissed Hartford, Twin City, Hartford Fire, Hartford Underwriters and Firemen's Fund on ripeness grounds identical to those cited by the Court in its August 19, 2010 ruling.

**JURISDICTION AND VENUE**

16. Venue is appropriate in this district pursuant to C.R.C.P. 98(c) because each of the Defendants is a nonresident of Colorado.

17. Each Defendant is authorized to sell insurance in Colorado and is subject to personal jurisdiction in Colorado.

18. Pursuant to C.R.C.P. 57 and the Colorado Uniform Declaratory Judgments Act, C.R.S. § 13-51-101, et seq., Plaintiffs are entitled to seek a declaration of Defendants' obligations under one or more contracts of insurance issued by Defendants and affording coverage to Plaintiffs.

19. There is an actual dispute between Plaintiffs and all of the Defendants because the Defendants have refused to indemnify Plaintiffs for one or more settlements of the Underlying CDW claims, for which Plaintiffs are entitled to insurance coverage.

**FACTS**

*The Underlying Chinese Drywall Claims*

20. Plaintiffs currently provide and have provided construction supply materials, including drywall, to residential and commercial builders and subcontractors around the country.

21. In early 2009, Plaintiffs began receiving claim notices related to alleged importation and sale of drywall by Rosen, TCY or others of Plaintiffs' predecessors. These claims state that Plaintiffs or their predecessors imported drywall from China (hereinafter "Chinese Drywall" or "CDW") and then sold the drywall to builders and subcontractors, who allegedly installed the drywall in residential homes between 2001 and 2007.

22. The Chinese Drywall claims allege property damage to the structure and contents of buildings and various parts of mechanical systems such as air-conditioner and refrigerator coils, electrical wires and other household appliances.

23. In some cases, the Chinese Drywall claims also allege bodily injury to the occupants of homes in which CDW was installed.

24. Plaintiffs and the other predecessor insureds have been named as defendants in at least sixteen CDW-related lawsuits at this time.

25. Seven of the CDW-related lawsuits were brought by individual homeowners or occupants in Florida state court. Three of these actions, *Casey v. Centerline Homes, et al.*, *Quackenbush v. Centerline Homes, et al.* and *Mueller v. Centerline Homes, et al.*, were subsequently dismissed without prejudice by the claimants. A list of the state court actions is attached hereto as Exhibit A.

26. Four of the CDW-related lawsuits were brought by individual homeowners or occupants in federal court. These actions were transferred for discovery and consolidated with many other cases in multidistrict litigation pending before the United States District Court for

the Eastern District of Louisiana. One action, *Gill v. Knauf Gips KG, et al.*, was subsequently dismissed without prejudice. In two other actions, *Campanelli v. Knauf Gips KG, et al.* and *Schatzle v. Knauf Gips KG, et al.*, an amended complaint has been filed that does not name any Plaintiff or any of Plaintiffs' predecessors.

27. Also filed in the multidistrict litigation was an Omnibus Complaint on behalf of numerous plaintiffs against numerous defendants, *Payton v. Knauf Gips KG, et al.* The only claimant against Plaintiffs listed in the Omnibus Complaint was Hugh Casey. That claim has since been dismissed without prejudice. Rosen is also named as a defendant in a second CDW-related Omnibus Complaint filed in the Eastern District of Louisiana, *Wiltz v. Knauf Gips, KG, et al.* The amended complaint contains no allegations specific to Rosen, but on information and belief there appear to be three claimants against Rosen. A list of the federal court actions is attached hereto as Exhibit B.

28. Three lawsuits, *Lennar Homes LLC v. Knauf Gips, KG, et al.*, *Pulte Home Corp. v. ProBuild East, LLC, et al.* (the "*Pulte* lawsuit") and *KB Homes Tampa, LLC v. ProBuild Holdings, Inc.*, have been brought by homebuilders who themselves face Chinese Drywall claims and assert that they are entitled to compensation from a number of different drywall suppliers, manufacturers and subcontractors, including Plaintiffs. *See also* Ex. A.

29. Apart from the sixteen filed lawsuits, Plaintiffs have received pre-suit notices from claimants for approximately nineteen other Chinese Drywall claims, sixteen by individual homeowners and three by homebuilders. A list of these claimants is attached hereto as Exhibit C.

30. Plaintiffs will provide all of the complaints and pre-suit notice letters in the Chinese Drywall claims on the Court's request.

*Applicable Policies*

31.    The insurance policies affording coverage for the losses arising from the underlying Chinese Drywall claims as well as any additional Chinese Drywall claims consist of primary liability insurance policies issued by the Primary Insurers to Plaintiffs or their predecessors (Strober, TCY or Rosen) (the "Primary Policies") and excess or umbrella liability insurance policies issued by the Excess or Umbrella Insurers to Plaintiffs or these same predecessors (the "Excess or Umbrella Policies") (together "the Policies").

32.    Plaintiffs or their predecessors paid the full premium due on each of the Policies, and the Defendants have accepted and retained the benefits of those premium payments.

33.    The definitions of "bodily injury" are similar throughout the Policies.  Typically, as in the Travelers Policies, "bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Exhibit D, attached hereto.

34.    The definitions of "property damage" are similar throughout the Policies. Typically, as in the Travelers Policies, "property damage" means "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." *See id.*

35.    The definitions of "occurrence" are similar throughout the Policies.  Typically, as in the Travelers Policies, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.*

36.    All of the Chinese Drywall claims allege "bodily injury" or "property damage," or both, caused by an "occurrence."

37. Travelers issued primary Policy No. Y-660-7173B851TOL05, for the period February 16, 2005 to February 16, 2006; primary Policy No. Y660031 5L14907TIL07, for the period February 16, 2007 to February 16, 2008; and umbrella Policy No. YSM-CUP-6757B19A-TIL-05, for the period February 16, 2005 to February 16, 2006.

38. Twin City issued primary Policy No. 83 SBF SZ6581, for the original period September 19, 2000 to September 19, 2001 and then renewed annually until the period ending on November 5, 2004.

39. Hartford issued primary Policy No. 83 UUN SZ0449, for the period November 5, 2004 to February 16, 2005; and umbrella Policy No. 83 RHU SZ0449 for the period November 5, 2004 to February 16, 2005.

40. Hartford Fire issued primary Policy No. 13UENU14665, for the period December 30, 2003 and renewed annually until December 31, 2004.

41. Hartford Underwriters issued excess Policy No. 83 SBF SZ6581, for the original period September 19, 2000 to September 19, 2001 and then renewed annually until the period ending on November 5, 2004.

42. Firemen's Fund issued umbrella Policy No. SUO-000-8778-4534, for the period February 16, 2006 to February 16, 2007; and umbrella Policy No. SUO-000-8898-0636, for the period February 16, 2007 to February 16, 2008.

43. St. Paul issued umbrella Policy No. QY05506161, for the period December 31, 2002 to December 31, 2003; umbrella Policy No. QZ06806047, for the period December 31, 2003 to December 31, 2004; umbrella Policy No. QZ06806127, for the period December 31, 2004 to December 31, 2005; and umbrella Policy No. QZ06825156, for the period December 31, 2005 to May 1, 2007.

*Notice and Failure to Provide Coverage*

44.   Plaintiffs provided timely and proper notice under each potentially applicable Policy issued by the Defendants for each of the Chinese Drywall claims.

45.   Plaintiffs have satisfied fully all conditions precedent and obligations under the Policies.

46.   The Defendants have denied coverage, reserved their rights, failed to reply to Plaintiffs' notice letters, or otherwise failed to acknowledge coverage for defense or indemnity under the Policies.

47.   The Defendants have the burden of proof on all coverage exclusions in the Policies.

48.   The Defendants will not be able to meet their burden that any exclusion applies to limit or preclude Plaintiffs' demand for coverage of the Chinese Drywall claims.

49.   Defendants Travelers and Hartford (on behalf of itself and Twin City) – along with two other primary insurers named in the Comprehensive Action – agreed to afford Plaintiffs a defense to certain Chinese Drywall claims subject to reservations of rights to terminate coverage at a later time.   Although these insurers received notice of the Chinese Drywall claims as early as April 2009, they failed to agree to satisfy defense costs until February 2010.   From August 2009, when outside defense counsel began working on the Chinese Drywall claims, to February 2010, counsel and experts in the underlying CDW-related lawsuits went unpaid.

50.   Most of the Defendants, in reservation of rights letters, have asserted many grounds on which they believe Plaintiffs likely are not entitled to insurance coverage under the Policies.  For example, the grounds cited by Travelers include, *inter alia*: lack of bodily injury,

property damage or an occurrence and the Pollution, "your work", "your product" and "expected or intended injury" exclusions. *See, e.g.*, Exhibit E, attached hereto (Feb. 17, 2010 ROR letter re *Pulte* lawsuit). The grounds cited by the other Defendants in their letters are substantially similar.

*Settlement of the Underlying Pulte Lawsuit*

51. On July 23, 2010, ProBuild received a $2.7 million settlement demand from Pulte Home Corporation, which had made one of the largest underlying CDW claims, a lawsuit pending in Florida state court and involving alleged installation of CDW in dozens of homes.

52. Thereafter, on August 23, 2010, ProBuild wrote to all of its insurers who are also Defendants in this Action and the Comprehensive Action requesting $2 million monetary authority to settle the Pulte claim. ProBuild discussed this matter again with its insurers at a September 2, 2010 claims information meeting, which all of the Defendants were invited to attend, and on a September 15 conference call requested by the four primary insurers who are currently defending.

53. Ultimately, no Defendant agreed to provide monetary authorization for any settlement with Pulte. Several Defendants, such as Hartford, offered numerous objections to any proposed settlement, as well as many conditions without which they would not provide authorization. Hartford designated its letter to this effect as confidential, and so the letter is not attached hereto, but it can be made available for inspection upon entry of a suitable protective order. Several Defendants did also agree to waive the "voluntary payments" condition in their policies (requiring consent to any settlement payment), but only to allow ProBuild to settle the *Pulte* lawsuit with its own funds, which ProBuild ultimately did.

54. ProBuild has considered the conditions proposed by Defendants such as Hartford for full monetary authorization of a settlement but concluded that many of them would not be possible to fulfill without losing the opportunity to settle on conditions favorable to ProBuild.

55. On November 22, 2010, ProBuild again contacted the primary insurers who are Defendants, including Travelers and Hartford, to inform them of a settlement conference with Pulte scheduled for December 2, 2010. ProBuild explained that the insurers would not be invited to participate, because none had authorized a settlement of any amount. In response to this information, none of these Defendants volunteered to reconsider their positions.

56. The settlement conference with Pulte took place as scheduled. As a result, ProBuild and Pulte have agreed to settle Pulte's claim against the Plaintiffs for $1.95 million. A copy of the communication memorializing this agreement is attached hereto as Exhibit F.

57. ProBuild immediately informed all of its insurers, including the Defendants, of the Pulte settlement and once more requested indemnification for the settlement. A copy of this request is attached hereto as Exhibit G. As of the date of this Complaint, no Defendant has agreed to fund or otherwise contribute to the settlement.

## COUNT I

### DECLARATORY JUDGMENT - DUTY TO INDEMNIFY (PRIMARY)
### Against Travelers, Hartford, Twin City and Hartford Fire

58. Plaintiffs incorporate by reference Paragraphs 1 through 57 of this Complaint, inclusive, as if fully set forth herein.

59. The Primary Policies obligate the Primary Insurers to indemnify, and to pay for any liability or settlements incurred by, Plaintiffs arising from the Chinese Drywall claims.

60. Plaintiffs have entered into at least one actual settlement of a significant Chinese Drywall claim, for which none of the Primary Insurers has agreed to indemnify the Plaintiffs.

61. Therefore, an actual and justiciable controversy exists between Plaintiffs and the Primary Insurers as to the Primary Insurers' duty to indemnify, and to pay for any liability or settlements incurred by, Plaintiffs arising from at least one of the Chinese Drywall claims.

62. Pursuant to C.R.C.P. 57 and the UDJA, Plaintiffs are entitled to a declaratory judgment that, pursuant to the terms of the Primary Policies, the Primary Insurers owe Plaintiffs a duty to indemnify, and to pay for any liability or settlements incurred by Plaintiffs arising from the Chinese Drywall claims.

## COUNT II

### DECLARATORY JUDGMENT - DUTY TO INDEMNIFY (EXCESS & UMBRELLA) Against Travelers, Hartford Underwriters, Firemen's Fund and St. Paul

63. Plaintiffs incorporate by reference Paragraphs 1 through 57 of this Complaint, inclusive, as if fully set forth herein.

64. The Excess or Umbrella Policies obligate the Excess or Umbrella Insurers to indemnify Plaintiffs against damages, loss, ultimate net loss and costs arising from the Chinese Drywall claims.

65. Plaintiffs have entered into at least one actual settlement of a significant Chinese Drywall claim, for which no Defendant has agreed to indemnify the Plaintiffs.

66. An actual and justiciable controversy exists between Plaintiffs and the Excess or Umbrella Insurers as to the Excess or Umbrella Insurers' duty to indemnify Plaintiffs for damages, loss, ultimate net loss and costs arising from the Chinese drywall claims.

67. Pursuant to C.R.C.P. 57 and the UDJA, Plaintiffs are entitled to a declaratory judgment that, pursuant to the terms of the Excess or Umbrella Policies, the Excess or

Umbrella Insurers owe Plaintiffs a duty to indemnify for damages, loss, ultimate net loss and costs arising from the Chinese Drywall claims.

**COUNT III**

**BREACH OF CONTRACT – DUTY TO INDEMNIFY**
**Against All Defendants**

68. Plaintiffs incorporate by reference Paragraphs 1 through 57 of this Complaint, inclusive, as if fully set forth herein.

69. Plaintiffs or their predecessors duly paid all premiums and complied fully with all conditions in the Policies issued by the Defendants.

70. The Defendants each failed to fulfill their contractual obligations under the Policies through their refusal to indemnify Plaintiffs for the reasonable settlement of the *Pulte* lawsuit, one of the most significant underlying Chinese Drywall claims.

71. The Plaintiffs have suffered damages in an amount to be proven at trial as a result of this failure to indemnify because the Plaintiffs have been denied the benefits of the insurance coverage issued to Plaintiffs or their predecessors.

**PRAYER FOR RELIEF**

***WHEREFORE***, Plaintiffs pray for Judgment as follows:

A. On Count I, Judgment in Plaintiffs' favor declaring that the Primary Insurers owe Plaintiffs a duty to indemnify, and to pay for any liability or settlements arising from the Chinese Drywall claims.

B. On Count II, Judgment in Plaintiffs' favor declaring that the Excess or Umbrella Insurers owe Plaintiffs a duty to indemnify for damages, loss, ultimate net loss and costs arising from the Chinese Drywall claims.

C. On Count III, Judgment in Plaintiffs' favor and against all Defendants for damages for breach of contract, in an amount to be established at trial.

D. On All Counts:

a. Attorney's fees

b. Costs.

c. Pre and post-judgment interest.

d. Any and all such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues.

Date: December 13, 2010

Respectfully submitted,

By: /s David J. Driscoll/
David J. Driscoll
Kenneth R. Morris
GARLIN DRISCOLL HOWARD LLC
245 Century Circle, Suite 101
Louisville, CO 80027
tel. (303) 926-4222
fax (303) 926-4224
ddriscoll@gdhlaw.com
kmorris@gdhlaw.com

Of Counsel:

Matthew L. Jacobs *(pro hac vice)*
Kali N. Bracey *(pro hac vice)*
Daniel I. Weiner *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066
mjacobs@jenner.com
kbracey@jenner.com
dweiner@jenner.com

Plaintiffs' addresses:
7595 Technology Way
Suite 500
Denver, CO 80237

**EXHIBIT A**
**State Court Actions**

| Case | Jurisdiction | Case Number | Status |
|---|---|---|---|
| *Ciancimino v. Centerline Homes, Inc., et al.* | Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida | 50 2009 CA 026362 XXXX MB | Pending |
| *Cox v. Vista Builders Inc., et al.* | Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida | 50 2009 CA 026054 XXXX MB | Pending |
| *Hernandez v. 6250 SW 79 STREET, LLC, et al.* | Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida | 9-41648CA40 | Pending |
| *Mueller v. Centerline Homes, Inc., et al.* | Circuit Court of the Nineteenth Judicial Circuit, St. Lucie County, Florida | 09-CA-7026 | Voluntarily Dismissed |
| *Quackenbush v. Centerline Homes, Inc., et al.* | Circuit Court of the Nineteenth Judicial Circuit, St. Lucie County, Florida | 562009CA006868 | Voluntarily Dismissal |
| *Casey v. Centerline Homes, Inc., et al.* | Circuit Court of the Nineteenth Judicial Circuit, St. Lucie County, Florida | 562009CA006486 | Voluntarily Dismissed |
| *Anderson v. Suntree Homes, Inc., et al.* | Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida | 50 2010 CA 023116 XXXX MB | Pending |
| *Lennar Homes, LLC v. Knauf Gips KG, et al.* [homebuilder] | Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida | 09-07901 CA 23 | Pending |

| | | | |
|---|---|---|---|
| *Pulte Home Corp. v. ProBuild East LLC, et al.* [homebuilder] | Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida | 50-2010-CA009562XXXXMB | Settled for $1.95 million on Dec. 7, 2010. |
| *KB Home Tampa LLC v. ProBuild Holdings, Inc.* [homebuilder] | Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida | 10-015923 | Pending |

**EXHIBIT B**
**Federal Actions**

| Case | Jurisdiction | Case Number | Status |
|---|---|---|---|
| *Payton, et al. v. Knauf Gips KG, et al.* | Federal-MDL (E.D. La.) | 09-CV-7628-EEF-JCW | Voluntarily dismissed. |
| *Wiltz, et al. v. Knauf Gips KG, et al.* | Federal-MDL (E.D. La.) | 10-CV-361-EEF-JCW | Pending. |
| *Campanelli v. Knauf Gips KG, et al.* | Federal - MDL - Consolidated Docket Number 2047 (E.D. La.) | 09-CV-558-FtM-29SPC (S.D. Fla.) | Amended complaint does not name Plaintiffs. |
| *Gill v. Knauf Gips KG, et al.* | Federal - MDL - Consolidated Docket Number 2047 (E.D. La.) | 09-CV-557-FtM-99 DNF (S.D. Fla.) | Voluntarily dismissed. |
| *Schatzle v. Knauf Gips KG, et al.* | Federal - MDL - Consolidated Docket Number 2047 (E.D. La.) | 09-CV-419-FtM-99DNF (S.D. Fla.) | Amended complaint does not name Plaintiffs. |
| *Smith v. Knauf Gips KG, et al.* | Federal - MDL - Consolidated Docket Number 2047 (E.D. La.) | 09-CV-418-FtM-29SPC (S.D. Fla.) | Transferred to MDL for discovery. |

**EXHIBIT C**
**Pre-Suit Notice Claimants**

1. Marni Klein-Adams and Robert Adams
2. David and Wendy Buck
3. Frank and Catherine Collepardi
4. D.R. Horton, Inc.
5. Mark and Jody Joseph
6. Minerva Maldonado
7. Michele Maldonado-Frese
8. Jerald Nelson and Ellen DeCarlo-Nelson
9. Robert Petrella
10. Regatta Construction
11. Linda St. Julien
12. John and MarthaYoung
13. Anthony and Donna Zito
14. S.D. & Associates
15. Michele Robbins
16. Clivens and Andrea Goldman
17. Kenneth and Audrey Roberts
18. Raymond and Dedre Williams
19. Zuzana Mozdzen

**Exhibit D**

# EXCERPT OF TRAVELERS POLICIES NO. Y-660-7173B851 NO. Y-660-0315L149

**Exhibit D**

TRAVELERS

POLICY NUMBER: Y-660-0315L149-TIL-07
EFFECTIVE DATE: 02-16-07
ISSUE DATE: 02-26-07

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS BY LINE OF BUSINESS.

| | |
|---|---|
| IL T0 02 11 89 | COMMON POLICY DECLARATIONS |
| IL T8 01 10 93 | FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS |
| IL T0 01 05 03 | COMMON POLICY CONDITIONS |
| IL T0 30 12 90 | NON-STANDARD PAYMENT SCHEDULE |
| IL T0 03 04 96 | LOCATION SCHEDULE |
| IL T8 00 | GENERAL PURPOSE ENDORSEMENT |

COMMERCIAL GENERAL LIABILITY

| | |
|---|---|
| CG T0 01 11 03 | COML GENERAL LIABILITY COV PART DEC |
| CG T0 07 09 87 | DECLARATIONS PREMIUM SCHEDULE |
| CG T0 08 11 03 | KEY TO DECLARATIONS PREMIUM SCHEDULE |
| CG T0 34 11 03 | TABLE OF CONTENTS |
| CG 00 01 10 01 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG D2 55 11 03 | AMENDMENT OF COVERAGE - POLLUTION |
| CG 21 70 11 02 | CAP ON LOSSES CERTIFIED ACTS TERRORISM |
| CG D0 37 04 05 | OTHER INSURANCE-ADDITIONAL INSUREDS |
| CG D1 87 11 03 | MANUFACTURERS AND WHOLESALERS XTEND END |
| CG D2 03 12 97 | AMEND-NON CUMULATION OF EACH OCC |
| CG D2 34 01 05 | WEB XTEND - LIABILITY |
| CG D2 43 01 02 | FUNGI OR BACTERIA EXCLUSION |
| CG D2 56 11 03 | AMENDMENT OF COVERAGE |
| CG D2 88 11 03 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG D3 26 01 04 | EXCLUSION-UNSOLICITED COMMUNICATIONS |
| CG D3 56 01 05 | MOBILE EQUIP/EXCL VEHICLES SUB TO MV LAW |
| CG D0 76 06 93 | EXCLUSION-LEAD |
| CG D1 42 01 99 | EXCLUSION-DISCRIMINATION |
| CG D2 42 01 02 | EXCLUSION WAR |
| CG T4 78 02 90 | EXCLUSION-ASBESTOS |

EMPLOYEE BENEFITS LIABILITY

| | |
|---|---|
| CG T0 09 08 93 | EMPLOYEE BENEFITS LIAB COV PART DEC |
| CG T0 43 11 88 | EMPLOYEE BENEFITS LIAB TABLE OF CONTENTS |
| CG T1 01 07 86 | EMPLOYEE BENEFITS LIABILITY COV FORM |
| CG T5 30 06 89 | AMENDMENT-EBL |
| CG D0 38 03 95 | EXCLUSION-IRC VIOLATIONS |
| CG T4 85 11 88 | ADDITIONAL EXCLUSION-EBL |
| CG T9 86 10 87 | FL-AMENDATORY ENDORSEMENT - EBL |

**Exhibit D**

POLICY NUMBER: Y-660-0315L149-TIL-07
EFFECTIVE DATE: 02-16-07
ISSUE DATE: 02-26-07

MULTIPLE SUBLINE ENDORSEMENTS

C = COMMERCIAL GENERAL LIABILITY
E = EMPLOYEE BENEFITS LIABILITY
L = LIQUOR LIABILITY

CG 02 20 11 06 FL-CHANGES-CANCELLATION AND NONRENEWAL (C, L)

INTERLINE ENDORSEMENTS

IL T3 68 01 06 FEDERAL TERRORISM RISK INSURANCE ACT
IL T3 76 11 02 CAP ON LOSSES - CERTIFIED ACTS TERRORISM
IL 00 21 07 02 NUCLEAR ENERGY LIAB EXCL END-BROAD FORM

**Exhibit D**

One Tower Square, Hartford, Connecticut 06183

COMMERCIAL GENERAL LIABILITY
COVERAGE PART DECLARATIONS

POLICY NO.: Y-660-0315L149-TIL-07
ISSUE DATE: 02-26-07

INSURING COMPANY:
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

DECLARATIONS PERIOD: From 02-16-07 to 02-16-08 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial General Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. COVERAGE AND LIMITS OF INSURANCE:

| COMMERCIAL GENERAL LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage To Premises Rented To You Limit (any one premises) | $ 100,000 |
| Medical Expense Limit (any one person) | $ 5,000 |

2. AUDIT PERIOD: ANNUAL

3. FORM OF BUSINESS: CORPORATION

4. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.

**COMMERCIAL GENERAL LIABILITY COVERAGE IS SUBJECT TO A GENERAL AGGREGATE LIMIT**

**Exhibit D**

ute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

© ISO Properties Inc., 2000

**Exhibit D**

device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1) Equipment designed primarily for:

            (a) Snow removal;

            (b) Road maintenance, but not construction or resurfacing; or

            (c) Street cleaning;

        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended

© ISO Properties Inc., 2000

**Exhibit D**

use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**Exhibit E**

Keith Hutchins
Account Executive
Special Liability Group, Houston
Telephone (281) 606-7620
Facsimile (281) 606-7654
khutchin@travelers.com

P.O. Box 4449
Houston, TX 77210-4449

4650 Westway Park Blvd, Suite 160
Houston, TX 77041 (overnight mail)

February 17, 2010

*CERTIFIED MAIL – RETURN RECEIPT REQUESTED*

Ms. Maury L. Cuje
Associate General Counsel
Pro-Build
7595 Technology Way, Suite 500
Denver, CO 80237

Re: Pulte Home Corporation ("Pulte") – Verona Lakes Development in Boynton Beach, Florida

Claim #: EGH 1597 R

Policyholder: Rosen Building Supplies, Inc.

Dear Ms. Cuje:

Travelers Special Liability Group has reviewed the above referenced claim (the "Pulte Claim") in conjunction with Commercial General Liability Policy Y-660-7173B851, effective from February 16, 2005 to February 16, 2006 and Commercial General Liability Policy Y-660-0315L149, effective from February 16, 2007 to February 16, 2008 (the "Policies"). Based on this review, Travelers will continue monitoring this matter under a complete reservation of rights as more fully outlined below. Although it has no obligation to do so, Travelers is willing to share in the costs of a joint investigation, including the retention of a consultant and counsel to represent Pro-Build Holdings, Inc. ("Pro-Build") in this matter[1].

In a letter dated September 10, 2009, Pulte notified Rosen Building Supplies, Inc. ("Rosen") and Pro-Build that homeowners within the Verona Lakes Development alleged that their homes may contain defective Chinese drywall. Pulte alleges that in 2001, Rosen supplied drywall material to Pulte for the construction of the Verona Lakes Development. Pulte advised that the purpose of the letter was to place Rosen on notice that claims may be asserted against it.

Since receipt of the letter, Pulte forwarded three additional notices to Pro-Build and Rosen pursuant to Florida Statute 558.004. These notices allege that the drywall is damaging other parts of the home. The notices advised that Pulte conducted an inspection of the homes and has set forth remediation protocol. Pulte invited Pro-Build and Rosen to attend and monitor the

[1] The specifics regarding Travelers agreement with Pro-Build's other carriers to share these costs will be sent in a separate letter.

**Exhibit E**

remediation. As discussed at our Defense/Carrier Meeting on January 21, 2010, Rodney Janis was retained to represent Pro-Build and Dr. Rick Coble was retained as a consultant.

Be advised that Pro-Build is not listed as an insured, a named insured or an additional insured under the Policies and does not otherwise qualify as an insured under the Policies. As such, we have no obligation to Pro-Build for liability it may have with respect to the Pulte Claim. However, since it alleged that Rosen supplied defective drywall in connection with the Verona Lakes Development, and based on our understanding of Pro-Build's relationship with Rosen as outlined below, Travelers will continue to monitor this matter and share in the costs of a joint investigation while reserving all rights under the Policies.

We have reviewed the Agreement and Plan of Merger between and among The Contractor Yard, LLC, TCY Acquisition, LLC, Rosen Building Supplies, Inc., Drew Rosen and Brian Gordon ("the Agreement") and the Articles of Merger between Rosen Building Supplies, Inc and The Contractor Yard (the "Articles of Merger") We have also reviewed the Certificate of Amendment to Certificate of Formation of The Contractor Yard, LLC dated March 5, 2007 (the "Certificate").

The Agreement provides that on the Closing date (December 17, 2007), "Sub (TCY Acquisition LLC) shall be merged with and into the Company (Rosen)", and that Rosen shall continue as the surviving corporation. The Articles of Merger (filed on December 19, 2007) documents the merger of Rosen and The Contractor Yard, LLC with The Contractor Yard, LLC as the surviving party. The Certificate changed the name of the corporation from The Contractor Yard, LLC to ProBuild East, LLC. It is our understanding that ProBuild East, LLC is a wholly owned subsidiary of ProBuild. We assume that ProBuild East, LLC and not ProBuild was the intended recipient of the Pulte Claim.

Be advised that the Policies contain the following Insuring Agreement, which reads in pertinent part:

> Section I – Coverages
>
> Coverage A Bodily Injury and Property Damage Liability
>
> 1. Insuring Agreement
>
>     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> ***
>
>     b. This insurance applies to "bodily injury" or "property damage" only if:
>
>         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**Exhibit E**

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no inured listed under Paragraph 1. of Seçtion II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been know prior to the policy period.

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In order for the Policies to respond to a loss, bodily injury and/or property damage, as defined above, must have occurred during the effective dates of the Policies. Neither the Pulte Claim nor the 558 notices contain specific allegations of bodily injury or property damage during the effective dates of the Policies. It is our current understanding that Rosen may have supplied drywall for the project in 2001. Therefore, should it be determined that there was no bodily injury or property damage which occurred during the effective dates of the Policies, no coverage will be provided. Likewise, should it be determined that the Pulte Claim and the losses sustained by the homeowners do not constitute a claim for "property damage" and/or "bodily injury" as those terms are defined in the Policies, no coverage will be provided.

Without limiting any of the forgoing, we wish to advise you of the following additional specific reservations:

1) Should our investigation or discovery determine that the allegations do not constitute an "occurrence" as defined in the Policies, no coverage will be provided.

**Exhibit E**

2) No coverage is provided for any "property damage" or "bodily injury" which was either expected or intended from the standpoint of the insured.

3) Should it be determined that the Pollution Exclusion in the Policies apply, no coverage will be provided. See exclusions section of Coverage A Bodily Injury and Property Damage Liability, which states in pertinent part:

This insurance does not apply to:

f. Pollution

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

4) Coverage will not apply to any "property damage" to your product arising out of it or any part of it.

5) Coverage will not apply for any loss, cost, or expense alleged to have been or to be incurred in connection with any claim for injunctive or equitable relief.

6) No coverage will be provided for any damage to "impaired property" or property not physically injured arising out of a defect, deficiency or dangerous condition in your product.

"Impaired property" is defined in the Policy as:

Tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

**Exhibit E**

If such property can be restored to use by:

b. The repair, replacement, adjustment or removal of "your product" or "your work"; or
c. Your fulfilling the terms of the contract or agreement.

"Your product" is defined in the Policies as:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your work" is defined in the Policies as:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations

7) Coverage will not apply to any claims for loss, cost or expense incurred by Pro-Build or others, for the loss of use, withdrawal, inspection, repair, replacement, adjustment, removal or disposal of your product, your work or impaired property, if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

8) Should it be determined that endorsement # CG D2 43 01 02 entitled FUNGI and BACTRIA EXCLUSION applies, no coverage will be provided. This endorsement states as follows:

This insurance does not apply to:

Fungi or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**Exhibit E**

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

"Fungi" is defined in the endorsement as:

Any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

9) Coverage will not apply to any liability arising out of the acts or omissions of any individual or organization other than those individuals or organizations described in the Policies as "Named Insured or would otherwise qualify as an Additional Insured. This is includes, but is not limited to, Pro-Build, ProBuild East, LLC and/or any of its alleged predecessor companies. (The Contractor Yard, LLC, U.S. Components, LLC, The Strober Organization, LLC, Strober Building Supply, LLC and Advanced Construction Solutions, LLC.)

10) In accordance with policy provisions and/or applicable case law, coverage may not apply to any punitive damages, fines or penalties alleged or awarded in the Pulte Claim.

11) Coverage will not apply to any voluntary payment, assumed obligation or incurred expense other than for first aid to others at the time of any accident or occurrence.

12) Any payments that might be made by us in this case are subject to the applicable limit of liability and/or deductible.

13) Should the applicable limit of liability be exhausted, our obligations in this matter will simultaneously terminate.

In the event that any matters reserved and set forth in this letter are rejected by any court of appropriate jurisdiction (which shall be deemed to include a final order on appeal), Travelers will provide coverage adopted by such court and will seek and demand reimbursement of payments made by it based upon the reservations set forth in this letter.

Should Travelers assert and prevail on any of the reservations set forth herein, it does not waive its rights, if any, to seek and demand reimbursement for any indemnity or other payments paid either to ProBuild or ProBuild East, LLC, or on their behalf in connection with the Pulte Claim, and will seek and demand reimbursement of any costs of defense as are reserved above.

Travelers has also reviewed the Commercial Excess (Umbrella) Liability Policy (the "Umbrella Policy") issued to Rosen by Travelers from February 16, 2005 to February 16, 2006. Subject to all terms, conditions and exclusions, the Umbrella Policy would only apply to a loss when the underlying (primary) limits have been exhausted or the retained limit as described in the Umbrella Policy has been met. Therefore, since there is no indication at this time that the Umbrella Policy would be impacted, Travelers will defer its coverage evaluation under the Umbrella policy

**Exhibit E**

reserving all rights and defenses which might arise under the Umbrella Policy. However, the Umbrella Policy also contains substantively similar language in the insuring agreement as cited above in the primary policies which requires that property damage and/or bodily injury occur during the effective dates of the Umbrella Policy. As such, coverage will not be afforded for the Pulte Clam under the Umbrella Policy for any property damage and bodily injury which did not occur during the effective dates of the Umbrella Policy.

As the Pulte Claim develops further, you will be advised of any further legal principles and policy provisions which we deem applicable and which would limit the defense and/or indemnity obligations which Travelers has undertaken or will undertake.

Should you have any questions regarding the above, please feel free to contact me.

Sincerely,

Keith Hutchins
Account Executive

KRH/kh

**Exhibit F**

**Weiner, Daniel I.**

**From:** Mike Laramie [Michael.Laramie@PulteGroup.com]
**Sent:** Tuesday, December 07, 2010 11:56 AM
**To:** Butterman, Mark
**Subject:** RE: Settlement

Agreed. Thanks Mark.

Best,

Mike

PulteGroup

MICHAEL J. LARAMIE
Vice President, Associate General Counsel
direct (248) 593-5858: fax (248) 433-4595
pultegroup.com

---

**From:** Butterman, Mark [mailto:Mark.Butterman@PROBUILD.COM]
**Sent:** Tuesday, December 07, 2010 11:40 AM
**To:** Mike Laramie
**Subject:** Settlement

Mike, I am following up on our discussion of a short while ago in which we agreed, subject to a mutually agreeable written settlement agreement being executed by the parties, to the following:

1. ProBuild will pay Pulte $1.950 million.
2. Pulte will dismiss the lawsuit and release ProBuild from all liability arising from the Verona Lakes subdivision in connection with Chinese Drywall claims.
3. Cooperation between the parties so that ProBuild can pursue its litigation against insurers on coverage issues.

These terms will be incorporated into a final settlement agreement by our respective counsel upon after you indicate your general concurrence with these terms.

Thanks Michael,
Mark

*Mark B. Butterman*
Vice President & General Counsel
PROBuild
7595 Technology Way, Suite 500
Denver, Colorado 80237
tel: 303-262-8323
cell: 303-514-5135
fax: 303-262-8501
mark.butterman@probuild.com
Visit our website at www.probuild.com

**Exhibit F**

---

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review or use by others is strictly prohibited. Any distribution or disclosure by or to others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

---

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by email and delete the message and any file attachments from your computer. Thank you

**Exhibit G**

**Weiner, Daniel I.**

| | |
|---|---|
| **From:** | Jacobs, Matthew L. |
| **Sent:** | Tuesday, December 07, 2010 5:30 PM |
| **To:** | anthony.ellseuson@snrdenton.com; daniel.feinberg@snrdenton.com; donna.vobornik@snrdenton.com; randy@ztlalaw.com; hscott@choate.com; etorrey@choate.com; chuck.hadden@troutmansanders.com; tony.jones@troutmansanders.com; clarence.lee@troutmansanders.com; dgarcia@thompsoncoe.com; bmartin@thompsoncoe.com; jhinkhouse@hww-law.com; rhodyl@hww-law.com; jboggioni@hww-law.com; memirow@kcfpc.com; cclemenson@cozen.com; cashlaw@comcast.net; kseedorf@talawfirm.com; eaton@ballardspahr.com; mala@palumbolawyers.com; bspano@rothgerber.com; mlinton@kcfpc.com; jyoung@mdmc-lawco.com; mbrooks@warllc.com; pzoog@aceweb.com; lmcheffey@mdc-lawco.com |
| **Cc:** | Jennifer.Sigman@chartisinsurance.com; Anthony.Dante@LibertyMutual.com; carl.dent@sedgwickcms.com; melanie.copley@sedgwickcms.com; brian.Karpe@thehartford.com; Marcia.Rowell@LibertyMutual.com; DPHELPS1 @travelers.com; elise.schreier@thehartford.com |
| **Subject:** | ProBuild/Pulte -- CDW Settlement |

TO ALL PROBUILD INSURANCE CARRIERS:

**In keeping with our past efforts to inform you of significant developments in ProBuild's CDW litigation with Pulte, I am writing to inform you that ProBuild has settled the CDW litigation with Pulte for the sum of $1.95 million. Pulte will dismiss its lawsuit against ProBuild and release ProBuild from all liability arising from the Verona Lakes subdivision in connection with CDW claims. A final settlement agreement is in the process of being prepared by the parties' counsel.**

**We continue to demand that you fully indemnify ProBuild for this settlement as we have asserted numerous times in correspondence, face-to-face through Mr. Butterman and in our pleadings filed in the both the Florida and Colorado insurance coverage actions.**

**Thank you.**

**Matt Jacobs**

---

Matthew L. Jacobs
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6096
Fax (202) 661-4928
MJacobs@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.